## ALLEGHANY CORPORATION v. GUARANTY TRUST CO. OF NEW YORK.*

District Court, S. D. New York.

April 6, 1938.

William J. Donovan, Carl E. Newton, and David Teitelbaum, all of New York City, for plaintiff.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl and Porter R. Chandler, both of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion by the plaintiff for a temporary injunction. The action is brought (1) to compel the defendant to execute and deliver to the plaintiff proxies to vote the shares of stock of the Chesapeake Corporation held by the defendant under a trust indenture dated February 1, 1929, as security for a bond issue of the plaintiff, and (2) to remove the defendant as trustee under the above mentioned indenture, as well as under two other trust indentures, dated respectively June 1, 1929, and April 1, 1930.

The plaintiff insists that it is entitled to the proxies for the shares pledged under the indenture of February 1, 1929, as a matter of right. The question under this branch of the case is largely one of interpretation. The indenture contemplates that at all times the aggregate value of the pledged securities shall be, at least 150 per cent. of the aggregate amount of bonds outstanding; it specifies that so long as that ratio is maintained, and there is no other default, the plaintiff shall be entitled to the proxies; and it provides that when the value falls below the required percentage the defendant shall be entitled to the proxies.

The indenture contains elaborate machinery for determining the value of the pledged collateral, and also for establishing the existence of a default. There is a provision for quarterly appraisals to be made by the president or a vice president

*Order affirmed 97 F.2d 367.

of the defendant; the appraiser in making these appraisals is "entitled in his discretion to rely upon statistical information, reports and financial statements * * * and upon market quotations and other sources of information"; and it is provided that the appraisal shall be delivered to the plaintiff "as promptly as practicable" after its receipt by the defendant.

· A quarterly appraisal in accordance with the requirements of the indenture was made by a vice president of the defendant on November 1, 1937, and delivered to the plaintiff on November 2, 1937. This appraisal showed that the aggregate value of the collateral was at the time less than 150 per cent. of the aggregate amount of bonds outstanding. The correctness of the appraisal is in no way disputed by the plaintiff.

This brought into operation the thirty-day grace period of article 3, section 3, reading, so far as material, as follows: "Sec. 3. Unless and until there shall happen any of the following events, viz., (1) in case within thirty days after receipt by the Corporation of any appraisal made and delivered as provided in Sections 2 or 6 of this Article Three showing that the thereinstated aggregate value of the pledged securities and deposited cash (as defined in Section 5 of this Article Three) is less than 150% of the aggregate amount of the bonds at the time outstanding under this indenture, the Corporation shall not deposit and pledge hereunder with the Trustee, as additional security, stocks, bonds or other corporate securities, to be selected by the Corporation in its discretion, of such aggregate value (determined as provided in Section 2 of this Article 3), or deposit cash to such amount, as shall make the aggregate value of the pledged securities (determined as aforesaid) and deposited cash equal to at least 150% of the aggregate amount of bonds at the time outstanding hereunder (unless such aggregate value shall have appreciated in the meantime to at least such 150%), * *.

Under this section the plaintiff had until December 2, 1937, to prevent the initial default which had occurred on November 2, 1937, from ripening into a fixed default. On November 29, 1937, the plaintiff attempted to do so by depositing with the defendant additional collateral, consisting of cash and securities, and on December 2, 1937, the defendant made a further appraisal, taking into consideration this additional collateral, which still showed an aggregate value below 150 per cent. There was thus a fixed default on December 2, 1937, which clearly entitled the defendant to invoke at that time the provision of the indenture giving it the right to vote the proxies for the pledged shares.

The plaintiff contends that this default on December 2, 1937, was cured by what subsequently transpired. On February 1, 1938, the defendant made a regular quarterly appraisal, which again showed the value of the collateral below the required 150 per cent. This appraisal was delivered to the plaintiff on February 2, 1938. The plaintiff says that it obliterated the prior default on December 2, 1937, and started the running of a further thirty day grace period, as provided for in article 3, section 3. It is also insisted that on three days within this thirty-day grace period, namely, on March 2, 3, and 4, 1938, the value of the collateral had appreciated to a point above 150 per cent. There was, however, no appraisal of the collateral on any of these three days by the recognized method prescribed in the indenture, and the values claimed by the plaintiff have been questioned by the defendant. The defendant did, however, make another appraisal on March 22, 1938, which showed that the value of the collateral had fallen to approximately 109 per cent.

I think it is entirely clear that once a default has occurred and become fixed, it subsists and continues until such time as a subsequent appraisal shows a valuation above 150 per cent. That is the plain meaning of article 3, section 4; it is also fairly well indicated by the language of article 3, section 3. There was no such subsequent appraisal in this case. The most that is claimed is that on three days in March the market prices of the pledged securities had advanced sufficiently to raise the value above 150 per cent. But the only method of determining the value of the collateral recognized by the indenture is an appraisal by the president or a vice president of the defendant. There is no provision to the effect that market quotations must be accepted even by the appraiser; it is merely specified that he may rely on such quotations if he cares to. Certainly, there is nothing in the indenture which required the defendant to act on the naked assertion of the plaintiff based on momentary market quotations for the deposited securities. I can see no escape, therefore, from the conclusion that

the defendant is entitled to the proxies on the pledged securities.

The remaining question concerns the charge of bad faith on the part of the defendant, and I do not believe that it will be at all helpful to make any detailed analysis of the voluminous affidavits bearing on that subject. It will be sufficient for the present purpose merely to say that after a careful examination of these affidavits, I fail to find in them anything to support the charge by the plaintiff.

The motion for a temporary injunction is in all respects denied.